IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS HENRIQUEZ-DISLA and MAGALAY PACHECO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE CO. | : | NO. 13-284 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                         May 29, 2014

After considering Plaintiffs' letter motion to compel seeking more specific responses to discovery requests, I ordered Defendant to provide copies of the unredacted claim files for the court's in camera review. Defendant had produced redacted copies in discovery, claiming attorney-client privilege, and Plaintiffs contend that the privilege does not apply because counsel was acting in the role of claims adjuster or investigator. See Doc. 28 at 2. For the following reasons, Plaintiffs' motion will be granted in part and denied in part.

**I.     BACKGROUND**

There was a theft at Plaintiffs' Philadelphia home on January 18, 2012, following which Mr. Henriquez-Disla filed a claim with Defendant, Plaintiffs' homeowners insurance carrier (Claim 0232659078 "the theft claim"). See Second Amended Complaint (Doc. 16) ¶¶ 11-12. On January 25, 2012, a fire occurred at Plaintiffs' home, and again Plaintiffs filed a claim with Defendant (Claim 0233275684 "the fire claim").

See id. ¶¶ 13-14.  Plaintiffs allege that Defendant has failed to pay the claims without any proper basis.  Id. ¶¶ 17-20.

On January 17, 2013, Plaintiff filed this action alleging breach of contract and bad faith.  See Doc. 1.  Defendant filed a counterclaim for insurance fraud on April 19, 2013, citing intentional and fraudulent misrepresentations.  See Doc. 17 at 16.

In response to discovery requests, Defendant provided redacted copies of the claim logs for the two claims, citing the attorney-client privilege and including a privilege log for the redacted information.  Plaintiffs also sought certain information regarding the retention of counsel and counsels' activities in the "investigation of Plaintiffs' claims."  See Doc. 28-1 at 9-10.  In response to the Interrogatories, Defendant provided the redacted claim logs and claimed attorney-client privilege.

## II.  LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  Federal Rule of Evidence 501 directs that the court shall utilize the state law of the state which "supplies the rule of decision" in determining evidentiary privileges.  F.R.E. 501.  Here, the case is brought pursuant to the court's diversity jurisdiction, alleging breach of contract and violation of Pennsylvania's bad faith statute.  Thus, Pennsylvania law governs any claimed privileges.  Montgomery Co. v. MicroVote Corp., 175 F.3d 296, 301 (3d Cir. 1999).

2

Pennsylvania law states

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. C.S.A. § 5928.  With respect to the attorney-client privilege, the Pennsylvania courts have held that "'the party asserting privilege has the initial burden to prove that it is properly invoked' and only then does the burden shift to 'the other party to prove why the applicable privilege would not be violated by the disclosure.'"  <u>Nationwide Mut. Ins. Co. v. Fleming</u>, 924 A.2d 1259, 1266-67 (Pa. Super. 2007) (quoting <u>Commonwealth v. Maguigan</u>, 511 A.2d 1327, 1334 (Pa. 1986)).

In their letter motion, Plaintiffs rely on a federal case arising out of Minnesota to argue that "[a]ttorney communications and work product are not protected when the attorneys are investigating claims in the regular course of business of an insurance company."  Doc. 28 at 2 (citing <u>Mission Nat'l Ins. Co. v. Lilly</u>, 112 F.R.D. 160 (D. Minn. 1986).  In that case, based upon the carrier's admission, the court found that the insurance company "immediately upon receiving notice of the fire, [decided] to employ attorneys to fulfill its ordinary business function of claims investigation."  <u>Id.</u> at 163.  Looking at the individual documents at issue, the court concluded that the "vast majority . . . submitted under claim of privilege here constitute pure factual investigation of the claim."  <u>Id.</u>  The court explained its reasoning as follows, "[t]hose items going to the issue of how the fire started and who was responsible for it constitute the fact investigation."  <u>Id.</u>  In a similar situation closer to home, the Honorable John Hughes of our sister court in New Jersey

3

was asked to compel production of documents withheld on the basis of attorney-client privilege.  Cellco P'ship v. Certain Underwriters at Lloyd's London, No. 05-3158, 2006 WL 1320067, at *4 (D.N.J. May 12, 2006).  After reviewing the withheld documents in camera, Judge Hughes concluded that counsel had not "performed any independent investigation of Plaintiff's claim, but rather provided legal advice regarding its claim, including strategy for addressing any potential challenges to Defendants' declination of such claim."  Id.  The court concluded the documents fell within the protection of the attorney-client privilege.

Here, Plaintiffs contend that defense counsel "were involved less than a month after the investigation began, communicating directly with Plaintiffs and investigating the insurance claims."  Doc. 28 at 2.  The primary dispute concerns the claim logs, which contain numerous redactions.  Review of the claim logs reveals that Allstate employees began the investigation into both of Plaintiffs' claims shortly after the claims were reported.  See Theft Claim Log Bates 26, Fire Claim Log Bates 41.  Review also reveals that, as Defendant states in response to the motion, see Doc. 29 at 6-7, counsel was retained to conduct an examination under oath ("EUO").  Defendant also argues that counsel was retained to provide legal advice, a not unusual occurrence when an insurer is considering denying a claim.  See id. at 6.

It is unclear whether an EUO is part of the ordinary business function of claims investigation, and I have been unable to locate any pertinent cases in this jurisdiction.  However, in New York, an EUO "is viewed . . . as part of an insurer's ordinary business, when conducted prior to declining coverage."  Bank Hapoalim, B.M. v. Am.

4

Home Assur. Co., No. 92-3661, 1994 WL 119575, at * 4 (S.D.N.Y. Apr. 6, 1994) (citing Landmark Ins. Co. v. Beau Rivage Rest., Inc., 509 N.Y.S.2d 819, 822 (N.Y. App. Div., 2d Dep't, 1986)).  In this case, it does not appear from the claim logs that any coverage decision had been made at the time counsel was contacted to conduct the EUO's.  In camera review of the unredacted logs indicates that counsel was charged, at least in part, with the duty of collecting financial and ownership information in connection with the EUO.  See Fire Claim Bates 186, 187.  I conclude that log entries and emails related to the scheduling and taking of the EUO's, including the collection of information for the EUO's, are part of the ordinary business function of claims investigation and therefore fall outside the attorney-client privilege.  However, any communication seeking counsel's advice remains privileged.  Also, once the EUO was taken, counsel's observations and opinions concerning the content of the statement are privileged, as it was legal advice regarding the propriety of the denial of the claim.  Thus, Plaintiffs are entitled to unredacted log entries for the following:

> February 6, 2012 at 12:07 p.m. and 12:20 p.m. (Fire Claim Bates 29),

> May 2, 2012 at 9:03 a.m. and May 11, 2012 at 12:16 p.m. (Fire Claim Bates 187),

> April 4, 2012 at 7:52 a.m., April 5, 2012 at 8:14 a.m. and April 9, 2012 at 8:41

a.m. (Fire Claim Bates 189),

> March 12, 2012 at 1:27 p.m., March 19, 2012 at 9:06 a.m. March 19, 2012 at 9:55

a.m., March 20, 2012 at 3:54 p.m., and March 21, 2012 at 12:58 p.m. (Fire Claim Bates 191),

March 7, 2012 at 12:52 p.m. (Fire Claim Bates 192), February 22, 2012 at 1:02 p.m. (Fire Claims Bates 196),

February 15, 2012 at 8:32 a.m. (Fire Claim Bates 197),

February 10, 2012 at 12:41 p.m. (Fire Claim Bates 198),

February 8, 2012 at 5:41 p.m. (Fire Claim Bates 200),

February 6, 2012 at 1:28 p.m. (Fire Claim Bates 201),

February 10, 2012 email regarding the transcription of the EUO (Fire Claim Bates 48),

July 24, 2012 at 10:14 a.m. and pasted correspondence regarding call from Plaintiff (Fire Claim Bates 179-80),

May 21, 2012 at 1:05 p.m. and pasted email regarding the scheduling of the EUO (Fire Claim Bates 185-86),[1]

February 6, 2012 at 12:21 p.m. (Theft Claim Bates 22),

Pre-Suit Referral Form (Theft Claim Bates 35),

February 6, 2012 at 12:21 p.m. (Theft Claim Bates 59),[2]

February 6, 2012 at 1:28 p.m. (Theft Claim Bates 60),

February 15, 2012 at 8:33 a.m. (Theft Claim Bates 61-62),

March 7, 2012 at 12:54 p.m. (Theft Claim Bates 62),

---

[1] The Fire Claim log contains a duplication of the log. Bates pages 29-45 are repeated at 202-217.

[2] This appears to be a duplicate entry to Theft Claim Bates 22. However, the page is not identical.

March 12, 2012 at 1:23 p.m. (Theft Claim Bates 63),

April 4, 2012 at 7:52 a.m., April 5, 2012 at 8:26 a.m., March 9, 2012 at 8:40 a.m. (Theft Claim Bates 64),

May 2, 2012 at 9:02 a.m. (Theft Claim Bates 65),

May 11, 2012 at 12:21 p.m., and May 21, 2012 at 1:06 p.m. (Theft Claim Bates 66),

May 21, 2012 at 1:06 p.m. and pasted email regarding scheduling of EUO (Theft Claim Bates 66-67),

May 24, 2012 at 8:31 a.m. (Theft Claim Bates 68),

June 18, 2012 at 1:44 p.m. (Theft Claim Bates 69),

July 24, 2012 at 10:13 a.m. and pasted and email regarding documents for EUO (Theft Claim Bates 71-72),

and July 24, 2012 at 10:16 a.m. (Theft Claim Bates 72).[3]

Similarly, log entries and information relating to subrogation possibilities and obtaining a cause and origin report (C&O) are ordinary business functions in claims investigation.  See Weber v. Paduano, No. 02-3392, 2003 WL 161340, at *8 (S.D.N.Y. Jan. 22, 2003) ("an investigation into the potential for subrogation is simply part of an insurer's ordinary practice of investigating [claims]").  Therefore, claim log entries

---

[3] There are nearly identical entries but with inconsistent redactions on October 10, 2012, at 1:18 p.m. in the Fire Claim log (Bates 169) and 1:21 p.m. in the Theft Claim log (Bates 82-83).  In the Fire Claim log, the title of the contents is redacted but the contents are not, whereas in the Theft Claim log, the entire entry is redacted.  Because privilege was not claimed as to the contents of the Fire Claim entry, the contents shall also be unredacted for the Theft Claim entry.

related to subrogation and obtaining a C&O are discoverable.  Defendant shall supply unredacted versions of the following correspondence and log entries:

    February 3, 2012 at 9:08 a.m. (Fire Claim Bates 30),

    January 31, 2012 at 1:09 p.m. (Fire Claim Bates 33),

    January 26, 2012 12:06 p.m. (Fire Claim Bates 37), and

    January 25, 2012 at 3:06 p.m. (Fire Claim Bates 39).

With respect to the log entries once suit was filed, the communications between counsel and Allstate were clearly in anticipation of litigation and reflect discussion of strategy.  Such communications are privileged and the redactions shall remain.

In addition to Plaintiffs' complaints regarding the redaction of the claim logs, they also take issue with Defendant's responses to specific interrogatories (4-7) in which Plaintiffs sought the identities of the individuals who determined that counsel needed to investigate Plaintiffs' claims, the identities of all individuals at Curtin and Heefner who participated in the investigation of the claims, and the individuals at Curtin and Heefner who determined that EUO's were necessary.  Plaintiff also seeks all documents Curtin and Heefner consulted in its investigation and in determining that the EUO's were necessary.  The unredacted log entries I have identified and ruled discoverable should generally answer these questions.[4]

---

[4] I note that review of the log entries reveals that counsel was retained to conduct the EUO's and their investigation began in preparation for those statements.  Thus, to the extent Plaintiff seeks the identities of individuals at Curtin and Heefner who made the decision to conduct EUO's, Defendant has adequately addressed the interrogatory.

Finally, Plaintiffs seek certain documents in their requests for production including policy and procedural manuals used to determine whether to deny a claim, whether to hire counsel to investigate claims, and whether to obtain EUO's. In response, Defendant argues that the information sought is confidential and proprietary, irrelevant, subject to the attorney-client and work product privileges, and that the requests are overbroad.

In this case, in response to the bad faith claim, Defendant specifically denied "taking the depositions of Plaintiffs for the pretext of trying to find a reason to deny the Claims" and "applying improper standards to substantiate its denial of Plaintiffs' first-party benefit claims." See Doc. 17 at 11. In order for Plaintiffs to test the legitimacy of these defenses, they need to know the policies which inform such decisions.

In Platt v. Fireman's Fund Ins. Co., No. 11-4067, 2011 WL 5598359 (E.D. Pa. Nov. 16, 2011), the Honorable Ronald L. Buckwalter reviewed the plethora of decisions on the issue in discussing the propriety of such discovery requests in an auto insurance coverage dispute. His review included Garvey v. Nat'l Grange Mut. Ins. Co., 167 F.R.D. 391 (E.D. Pa. 1996), in which the late Honorable Herbert Hutton concluded that an insurance company's internal claims-handling procedures were not discoverable, noting that "the fact that the defendant may have strayed from its internal procedures does not establish bad faith." Id. at 396. Since the decision in Garvey, however, Judge Buckwalter found a number of cases wherein the court found a claims manual or claims-handling procedure relevant to a bad faith claim. Platt, 2011 WL 5598359, at *2 (citing Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 177 (E.D. Pa. 2004) ("Garvey's

admonition that straying from internal procedures does not establish bad faith does not mean that straying from internal procedures is never probative evidence of bad faith."); Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co., No. Civ. A. 03-4145, 2004 WL 3037947, at *3 (E.D. Pa. Dec. 4, 2004) ("[A]ny material which pertains to instructions and procedures for adjusting claims and which was given to the adjusters who worked on plaintiffs' claims may be relevant to the action and must be produced."); Robertson v. Allstate Ins. Co., No. Civ. A. 98-4909, 1999 WL 179754, at *6 (E.D. Pa. Mar. 10, 1999) ("Given the liberal scope of federal discovery and the fact that such information may lead to the discovery of admissible evidence, [the defendant] is ordered to produce claims or procedure manuals setting forth company practices or policies" pertaining to claims such as the plaintiff's."). Guided by the evolving caselaw, Judge Buckwalter found "that the materials used by Defendant in processing Plaintiff's insurance claims may be relevant to her cause of action for bad faith." Platt, 2011 WL 5598359, at *2.

Judge Buckwalter recognized the sensitive nature of the claims manuals and the overbroad request. He limited discovery to "any material which pertains to instructions and procedures for adjusting claims and which was given to the adjusters who worked on [Plaintiff's] claim," and ordered that the material be kept confidential. Platt, 2011 WL 5598359, at *2 (quoting Safeguard Lighting, 2004 WL 3037947, at *3). Following Judge Buckwalter's well-reasoned decision, I will follow suit.

Accordingly, Defendant shall produce copies of the claims procedures which inform its employees' decisions to deny claims similar to Plaintiffs', obtain EUO's, and

hire counsel to investigate claims (in the context of preparation for the EUO's). Plaintiffs and their counsel shall maintain the confidentiality of these disclosures.

      An appropriate Order follows.