IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANCIS HENRIQUEZ-DISLA and MAGALAY PACHECO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | : | NO.  13-284 |

## MEMORANDUM AND ORDER

ELIZABETH T. HEY, U.S.M.J.                                    February 10, 2015

Plaintiffs brought this action for breach of contract and bad faith based on Defendant's denial of insurance coverage for losses resulting from a theft and fire which occurred in January 2012, at a property Mr. Disla owned and insured through Allstate.[1] Defendant filed a counterclaim for insurance fraud.  Presently before the court are Allstate's motion for summary judgment on Plaintiffs' claims for breach and bad faith and its own claim for insurance fraud, and Plaintiffs' motion for partial summary judgment on Allstate's insurance fraud counterclaim.  For the reasons that follow, I will grant Allstate's motion with respect to the bad faith claim and deny the remainder of the motions.

## I.      FACTS

On September 2, 2011, Mr. Disla purchased a home located at 2022 Stanwood Street in Philadelphia ("the property" or "the Stanwood property").  See Docs. 71-10 at 4;

---

[1]In Plaintiffs' filings, counsel refers to his clients as Mr. Disla and Ms. Pacheco, and collectively as the Dislas.  I will do the same.

72-11 at 2.[2]  Prior to closing, Mr. Disla applied for homeowners insurance with Allstate

on August 29, 2011.  See Doc. 71-5.  The insurance application that Mr. Disla signed

indicates that he is single, would be the only occupant of the residence, and that he

moved into the residence in August 2011.  Id.  On January 18, 2012, there was a theft at

the property.  Docs. 16 ¶ 11; 71-14 at 2.  When she first reported the loss to Allstate on

January 19, 2012, Ms. Pacheco said that $11,000 in cash, five watches, a laptop,

cellphones, keys to their vehicles and close to $1,500 in jewelry were taken.  She also

said that the sofas were split open with a knife.  Doc. 75-9 at 2-3.  After the theft, Ms.

Pacheco and her son did not stay at the property.  Doc. 75-4 at 10.  On January 24, 2012,

Ms. Pacheco informed Allstate that four smoke detectors were also missing from the

house.  Id. at 6.

　　　In the early morning hours of the next day, January 25, 2012, there was a fire at

the property.  Doc. 75-1 at 2.  The marshal reported that the fire was incendiary and

started in a rear bedroom closet upstairs.  Id. at 3; Doc. 75-11 at 8.  According to Mr.

Disla, he was asleep in the front upstairs bedroom when he heard a loud sound and

smelled smoke.  He left the property and called 9-1-1.  Doc. 75-11 at 8.  Ms. Pacheco

contacted Allstate later that day to report the fire loss.  Doc. 75-9 at 8.

　　　On October 19, 2012, after investigating the claim and conducting examinations

under oath (EUO) of both Plaintiffs, Allstate denied Plaintiffs' theft and fire claims based

on alleged material misrepresentations made by Plaintiffs.  Doc. 72-5 at 2.  Plaintiffs filed

---

[2]All citations are to the court's Electronic Case Filing (ECF) pagination.

this suit for breach of contract and bad faith on January 17, 2013.  Doc. 1.  On April 19,

2013, Defendant filed an answer and counterclaim for insurance fraud.  Doc. 17.  On

January 5, 2015, Allstate filed a motion for summary judgment on all claims, arguing that

it properly denied coverage based on Plaintiffs' material misrepresentations, and that it

was entitled to recovery for fraud based on Plaintiffs' intentional and fraudulent

misrepresentations.  Doc. 71.  On the same day, Plaintiffs filed a motion for partial

summary judgment on Allstate's counter-claim.  Doc. 72.  Each side has responded to the

other's motion, and filed a reply.  Docs. 75, 76, 79, 80.

## II.    LEGAL STANDARD

Summary judgment may be granted only "if the movant shows there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986).[3]  A factual dispute is "material" if it might affect the outcome of

the case under governing law.  Id.  This analysis remains unchanged when there are

cross-motions for summary judgment because "[c]ross-motions are no more than a claim

by each side that it alone is entitled to summary judgment, and the making of such

inherently contradictory claims does not constitute an agreement that if one is rejected the

---

[3]Anderson predated the 2010 Amendment to Rule 56.  However, the change in
wording and location within the rule for the summary judgment standard did not alter the
standard or caselaw interpretation of the standard.  Fed. R. Civ. P. 56 advisory
committee's note to 2010 Amendments.

other is necessarily justified or that the losing party waives judicial consideration and and determination whether genuine issues of material fact exist." Rains v. Cascade Indus., Inc. 402 F.2d 241, 245 (3d Cir. 1968); see also Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "The non-moving party cannot rest on mere pleadings or allegations" and must point to actual evidence in the record on which a fact finder would rely in deciding its way. El v. Se. Pa. Transp. Auth., 479 F.3d 232, 242 (3d Cir. 2007). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co., 998 F.2d 1224, 1230 (3d Cir. 1993)). Rather, the court must consider the evidence and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party." Matsushita Elec. Indus. Co. v.

4

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369

U.S. 654, 655 (1962)).  If a conflict arises between the evidence presented by the parties,

the court must accept as true the allegations of the non-moving party, and "all justifiable

inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

## III.   DISCUSSION

### A.   Breach of Contract - Material Misrepresentations

In cases of insurance coverage disputes in Pennsylvania, "the insured bears the

initial burden to make a prima facie showing that a claim falls within the policy's grant of

coverage."  Hamm v. Allstate Prop. & Cas. Ins. Co., 908 F. Supp.2d 656, 666 (W.D. Pa.

2012) (quoting State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d

Cir. 2009)).  The burden then shifts to the insurer to demonstrate "that a policy exclusion

excuses the insurer from providing coverage if the insurer contends that it does."  Id.  For

purposes of this motion, it is not disputed that the losses would otherwise be covered by

the policy, and thus the focus is the propriety of Allstate's grounds for denying coverage.

In denying Plaintiffs' claims for their theft and fire losses, Allstate relied on a

portion of the insurance contract denying coverage for material misrepresentations.  Doc.

72-5 at 2.  Allstate has moved for summary judgment on Plaintiff's breach of contract

claim on the same basis.[4]  The insurance policy that Allstate issued contained the

following language:

---

[4]In responding to Defendant's motion for summary judgment, Plaintiffs characterize Allstate's material misrepresentation defense as new, allegedly formulated once Allstate conceded that it was not relying on a suspicion of arson.  Doc. 76 at 11.

> We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

Doc. 72-3 at 14.

Allstate notes that "[i]ntentional misrepresentation as to any material fact will relieve the insurer of all liability and serve as a complete bar to recovery by the insured." Doc. 71-20 at 8 (citing Mowad vs. Auto. Underwriters Ins. Co., 106 A.2d 860 (1954); Wezorek v. Allstate Ins. Co., 2007 WL 2264096 (E.D. Pa. Aug. 7, 2007)). A representation must meet two elements to fall under this policy language; it must be knowingly false and it must be material. As to the first element, the misstatements must be made knowingly or in bad faith. "Innocent mistakes, even when involving material misrepresentations, are insufficient to void an [insurance] contract." Justofin v. Metro. Life Ins. Co., Civ. No. 01-6266, 2002 WL 1773007, at *4 (E.D. Pa. Jul. 29, 2002) (citing Am. Franklin Life Ins. Co. v. Galati, 776 F.Supp. 1054, 1060 (E.D. Pa. 1991)). However, "[w]here it affirmatively appears from sufficient documentary evidence, that . . . false answers are shown to have been given by the insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer." Hepps v. Gen. Am. Life Ins., Civ. No. 95-5508, 1998 WL 564497, at *4 (E.D. Pa. 1998) (quoting Derr v. Mut. Life Ins. Co., 41 A.2d 542, 544 (1945)).

Second, in the context of an insurance contract, "[t]he question of materiality is generally considered one of fact and law, but if the facts misrepresented are so obviously

---

Contrary to Plaintiffs characterization, Allstate's denial of the claim, as noted in the denial letter, was based on material misrepresentations.

important that 'reasonable minds cannot differ on the question of materiality,' then the

question becomes one of law that the court can decide at the summary judgment stage."

Parasco v. Pac. Indem. Co., 920 F.Supp. 647, 654 (E.D. Pa. 1996) (quoting Gould v.

Am.-Hawaiian S.S. Co., 535 F.2d 761, 771 (3d Cir. 1976)); see also Hasan v. Allstate

Ins. Co., Civ. No. 11-5109, 2013 WL 1773816, at *7 (E.D. Pa. Apr. 24, 2013).

"Information on an application is material 'if knowledge or ignorance of it would

influence the decision of the issuing insurer to issue the policy, or the ability of the

insurer to evaluate the degree and character of risk, or the determination of the

appropriate premium rate." Jung v. Nationwide Mut. Fire Ins. Co., 949 F.Supp. 353, 357

(E.D. Pa. 1997). "In the context of an insurer's post-loss investigation, 'the materiality

requirement is satisfied if the false statement concerns a subject relevant and germane to

the insurer's investigation as it was then proceeding." Parasco, 920 F.Supp. at 654

(quoting Fine v. Bellefonte Underwriters Ins. Co., 725 F.2d 179, 183 (2d Cir. 1984)).[5]

    Allstate contends that certain statements made by the Dislas were material

misrepresentations, resulting in the denial of coverage.  Plaintiffs deny that they made

misrepresentations and that any inconsistencies in responses to questions were not

---

[5]Plaintiffs ask the court to "reject Allstate's attempt to redefine insurance law."
Doc. 76 at 11.  However, the standard cited by Allstate – that the false statement concern
a subject relevant and germane to the insurer's investigation – is the standard in
Pennsylvania.  See Parasco, 980 F.Supp. at 654.  To the extent Plaintiffs suggest that
Allstate's inability to establish Plaintiffs' responsibility for the fire and theft losses limits
Allstate's ability to rely on material misrepresentations to deny coverage, it is mistaken.
See Doc. 76 at 12.  There is no requirement in the relevant language of the policy that an
insured's misrepresentations pertain to the cause of the loss.

material.[6]  Because I find that genuine issues of material fact exist as to whether any of

the alleged misrepresentations were intentional or material, I will deny Defendant's

motion for summary judgment on the breach of contract claim.  Below, I will discuss

each of the alleged misrepresentations upon which Allstate relies in seeking summary

judgment.[7]

### 1.   Date of Purchase and Date of Residence

Allstate first argues that Mr. Disla misrepresented the date he purchased the

property and the date that he and his wife moved to the property.  In the insurance

application he signed, Mr. Disla stated that he purchased and moved into the property in

August 2011.  Doc. 71-5 at 2, 5.  However, Mr. Disla went to closing on the property on

September 2, 2011.  Doc. 72-11 at 2.  In Ms. Pacheco's recorded statement and Mr.

Disla's EUO, they stated that they purchased the property in September 2011 and moved

in shortly after closing.  Docs. 71-9 at 10; 71-7 at 3.

---

[6]Plaintiffs argue that Defendant must prove material misrepresentations by clear
and convincing evidence.  Doc. 76 at 4-5.  However, the cases cited by Plaintiffs deal
with fraud in the inception of the policy where the insurers sought to void the policies ab
initio.  Id. (citing, inter alia Wezorek v. Allstate Ins. Co., Civ. No. 06-1031, 2007 WL
2264096, at *11-13 (E.D. Pa. Aug. 7, 2007); Tudor Ins. Co. v. Twp. of Stowe, 697 A.2d
1010, 1015 (Pa. Super. 1997)).  Defendant has not addressed whether it carries a clear
and convincing or preponderance evidentiary burden of proof.  No matter which standard
applies, genuine issues of material fact bar judgment on the breach of contract claim.
Counsel should brief the burden of proof issue prior to submitting jury instructions with
their final pretrial memorandum.

[7]In the denial letter, Allstate also relied on Mr. Disla's activities at the time of the
fire in denying the claim.  Doc. 72-5 at 2.  Based on Mr. Disla's cell phone bill, Allstate
believed he had been texting at the time of the fire rather than asleep as he stated.  Further
investigation revealed that the text messages on the bill were recorded in Pacific rather
than Eastern time and Allstate has withdrawn this basis for denial.  Doc. 71 at 17 n.9.

Plaintiffs argue that there was no misrepresentation because "a purchase does not close immediately."  Doc. 76 at 4.  It may be that when he applied for the insurance, Mr. Disla considered the signing of the agreement of sale as the purchase date.  Moreover, review of the record on summary judgment establishes that Mr. Disla was not fluent in English and required the assistance of a translator at his EUO.  See Doc. 71-9 at 3.  The insurance application that Mr. Disla completed on August 29, 2011, is in English and the record does not disclose whether it was translated for him.  In a declaration attached to Plaintiffs' summary judgment motion, Mr. Disla stated that his insurance agent filled out the application for him.  Doc. 72-2 at 4.

Additionally, Allstate has failed to assert how the discrepancy of a month (or what might actually be a few days) is material.[8]  Perhaps if the theft or fire had occurred near the date of settlement, Allstate would be able to argue that the representation as to the specific date of ownership had an impact on how it weighed the application.  Although Allstate's representative stated that factual information, such as when the house was purchased, was "a reasonable question to ask," she did not say how the purchase date would have affected Allstate's decision to insure the property.  Doc. 72-7 at 3.  On this record, the court cannot conclude as a matter of law, especially with evidence of Mr. Disla's difficulty with English, that these were material misrepresentations.

---

[8]I note that Mr. Disla identified Bank of America as the mortgagee in the application and the title search revealed that Bank of America is the mortgagee.  Docs. 71-5 at 2; 71-10 at 2.

2.    Marital Status of the Dislas

Next, Allstate contends that Mr. Disla misrepresented his marital status on the application.  The application reflects his marital status as single, and indicates that he will be the only occupant of the property.  Doc. 71-5 at 2.  Contrary to the application, both the Dislas stated during their EUO's that they were married in 2008, three years prior to the insurance application.  Docs. 71-8 at 10; 71-9 at 14.

As previously noted, Mr. Disla is not fluent in English and there is no indication that the application was translated to him before he signed it.  In his declaration, Mr. Disla explained that his insurance agent completed the application for him and he did not know why the agent indicated he was single, noting that it may have been because Mr. Disla bought the house in his own name.  Doc. 72-2 at 4.  Thus, on this record the court cannot conclude that Mr. Disla made a material misrepresentation regarding his marital status on the application.[9]

3.    If/When the Dislas Moved into the Property

Allstate next argues that Plaintiffs made conflicting material representations about the date they moved into the property.  As to Mr. Disla, he indicated on the insurance application that he moved into the residence in August 2011, Doc. 71-5 at 2, but said in his EUO, that he, his wife, and her son moved into the property a week after closing.  Doc. 71-9 at 11.  For the reasons stated earlier regarding Mr. Disla's understanding of the

---

[9]The identity of the residents of the property is clearly material to the investigation of the claims and the property covered by the policy.  See Hasan v. Allstate Ins. Co., Civ. No. 11-5109, 2013 WL 1773816 at *13 (E.D.Pa. Apr. 24, 2013) (who resides at the property is reasonable investigation for insurer).

application, the court cannot conclude that he made a willful misrepresentation in the application as to the date he and his family moved in.

As to Ms. Pacheco, Allstate maintains that she made a knowing misrepresentation at her EUO when she stated that she moved into the property in the spring. Doc. 71 at 25. However, when read in context, this error may have been the result of Ms. Pacheco's confusion about the date of settlement. Earlier in the examination, she had said that she could not remember the closing date, and rendered a "guess" that it was in the spring. Doc. 71-8 at 14. She also explained that they starting taking things over to the new house and sleeping there about three days after closing. Id. Thus, rather than a material misrepresentation, Ms. Pacheco's EUO evidences her confusion about the closing date, and indicates they began moving in shortly after closing, consistent with Mr. Disla's report.

### 4. Ms. Pacheco's Residency

It is undisputed that, prior to Mr. Disla's purchase of the property at Stanwood Street, his wife resided at a home on Turner Street. Allstate contends that the differing statements that the Plaintiffs gave regarding Ms. Pacheco's residence at the Stanwood property establish material misrepresentations. During her EUO, Ms. Pacheco was asked if there had been a time in the past ten years that she did not live at the Turner Street address and she said that she had always lived there, implying that she had never lived at the Stanwood property. Doc. 71-8 at 11. However, in the same statement, she said that she moved to the Stanwood property three days after closing. Id. at 14.

Again I find these inconsistencies do not support summary judgment.  Put in context, Ms. Pacheco could have interpreted the question about her residence in the past ten years to refer to her residence prior to the Stanwood property.  She did the same thing during her recorded statement when she was asked how long she had lived at Turner Street.  Ms. Pacheco responded, "[a]ll my life," despite having just told Allstate's interviewer that she had lived in the Stanwood property since September of 2011.  Doc. 71-7 at 3.

The same is true of Allstate's arguments regarding inconsistent statements about when Ms. Pacheco left the Stanwood property.  In her EUO, Ms. Pacheco said she returned to the Turner Street property two days after the robbery.  Id. at 20.  However, Allstate claims that Ms. Pacheco said in her recorded statement that she returned to Turner Street after the fire.[10]  Since the fire occurred a week after the theft, Allstate argues that this is an additional material misrepresentation.  Under the circumstances, genuine issues of material fact exist as to whether this mistake was intentional.

### 5.   Location of Stolen Cash

Allstate next relies on differing descriptions of the location of cash that was stolen to argue that it is entitled to summary judgment.  Ms. Pacheco stated at her EUO that there was $11,000 under the fabric of the sofa.  Specifically, she answered "yes" to the question "you stuff [the money] in and it kind of falls to the catch-all fabric that hides the springs, is that right?"  Doc. 71-8 at 19.  When Mr. Disla was asked at his EUO if there

---

[10]Allstate refers to page 6 of Ms. Pacheco's recorded statement.  That page was not attached as an exhibit.

was money in a chair, he said that he hid the money in the bottom part of the chair.  "I made an opening.  I put it in and then I seal it again . . . [w]ith a staple."  Doc. 71-9 at 16. The police report indicates that the furniture was slashed open and a small lockbox with the money was taken.  Doc. 71-14 at 2.  Neither of the Dislas mentioned a lockbox in any of their statements.

Again, issues of material fact bar summary judgment.  It is unclear whether the Dislas' statements were intentionally false or if there is another explanation for the discrepancy.  In the police report, the complainant is noted as Mr. Disla.  Doc. 71-14 at 2. As previously mentioned, Mr. Disla has difficulty with the English language.  It is unclear if the officer taking the report spoke Spanish or if a translator aided Mr. Disla in making his complaint.  Without factual development of the circumstances, the court is unable to conclude that the Dislas' subsequent statements were intentional material misrepresentations.

6.     Smoke Detectors and Keys to the Property

When Ms. Pacheco reported the theft to Allstate, she did not identify smoke detectors among the missing items.  The log notes indicate that Ms. Pacheco called the day before the fire (six days after the theft) and reported that she forgot to mention that four smoke detectors were stolen.  Doc. 71-12 at 5.  The following day, the adjuster's notes state that Ms. Pacheco "advised me yesterday that she feared someone would set her house on fire, and now they have."  Doc. 71-12 at 7.  It is impossible on this record to determine if the failure to initially report that the detectors were missing was an intentional misrepresentation or simple oversight.

13

A Recorded Statement Summary completed on January 20, 2012, by an Allstate representative indicates that Ms. Pacheco specifically mentioned that the thief took the keys to their vehicles but did not take the house keys.  Doc. 71-13 at 3.  However, the log entry for the day of the fire (January 25, 2012) indicates that Ms. Pacheco said for the first time that the house keys had been stolen, explaining why there was no forced entry at the time of the fire.  Doc. 71-12 at 7.

Although such statements seem contradictory, the evidence upon which Allstate relies are notes taken from conversations with Ms. Pacheco and may not represent the complete picture.  For example, the record does not reveal how many sets of house keys the Dislas had.  Summary judgment is appropriate when the falsity of the statement and bad faith of the speaker affirmatively appear from "competent and uncontradicted testimony of plaintiff's own witnesses."  Justofin, 2002 WL 1773007, at *4.  Examples include hospital records, proofs of death, and uncontradicted testimony of plaintiff's own witnesses.  Id.  Here Allstate relies on notes taken by its own representative after conversations with Ms. Pacheco.  The reliability of the notes and the understanding of the note-taker have not been tested.  Judgment is inappropriate on this record.

### 7.    Refrigerator Damage

Allstate next argues that there were discrepancies in the description of damage to the refrigerator.  Specifically, in her recorded statement Ms. Pacheco stated that the door to the refrigerator was broken after the theft.  Doc. 71-7 at 4-5.  During her EUO, Ms. Pacheco explained that the outside of the refrigerator was not damaged during the theft, but the inside of the door was destroyed during the theft.  Doc. 71-8 at 144.  Yet, Mr.

14

Disla stated in his EUO that there was no damage to the inside of the refrigerator.  Doc. 71-9 at 15.

Although seemingly inconsistent, considering Mr. Disla's difficulty with the English language (as evidenced by his description of a broken door on a sink just after the question about the refrigerator), considered in the light most favorable to the Plaintiffs, the court cannot conclude that this was a misrepresentation without Mr. Disla explaining his understanding of the question and Ms. Pacheco explaining the damage to which she was referring.

### 8.   How Plaintiffs Learned of the Theft

Allstate also points to a discrepancy in the recollections regarding how the Dislas learned of the theft.  According to Mr. Disla, his neighbor Nancy called him to tell him that the doors were open to the house and he got in contact with his wife as he drove to the house from work.  Doc. 71-9 at 13.  This evidence comports with the neighbor's recollection.  Doc. 71-15 at 21.[11]  However, Ms. Pacheco stated that she learned of the theft from a call from the neighbor to her cellphone.  Doc. 71-8 at 18.  The neighbor testified at her deposition that she did not call Ms. Pacheco at the time of the theft.  Doc. 71-15 at 10.[12]  Considering the context of Ms. Pacheco's statement, it is unclear if this was an innocent mistake or an intentional falsehood.

---

[11]Allstate did not obtain the neighbor's deposition until well after they had denied the claim.  At the time of the denial, they merely had Mr. Disla's statement that he contacted his wife while driving to the house.

[12]In their summary judgment motion, the Dislas assert that Ms. Gillen, the neighbor, called both of the Dislas about the theft and refer to page 21 of Ms. Gillen's

9.    Where Ms. Pacheco was when Notified of the Fire

Allstate claims that Ms. Pacheco misrepresented where she was when she was notified of the fire.  In the claim log, an Allstate employee noted that when Ms. Pacheco called to report the fire, she said that she had been staying at her mother's house.  Doc. 71-12 at 7.  During her EUO, Ms. Pacheco indicated that she was at work when she got a call from her husband reporting the fire.  Doc. 71-8 at 22.  During Mr. Disla's EUO, in discussing the fire, he stated that it took a while for his wife to arrive at the house because she was living at the house on Turner Street.  Doc. 71-9 at 19.  Finally, in a complaint Mr. Disla filed with the Pennsylvania Insurance Department, he stated that the house "was set on fire while [his] wife and [he] were upstairs asleep."  Doc. 71-16 at 5.

First, I note that the claims log entries are merely the notes taken from a telephone conversation.  As previously mentioned, it is unknown whether there was any misunderstanding or miscommunication between Ms. Pacheco and the Allstate employee taking the notes.  Moreover, in the claims log entry, it is unclear where Ms. Pacheco was at the time she heard about the fire, only that she was staying at her mother's house.  She could have been staying at her mother's, but at work at the time she received the call.

Turning to Ms. Pacheco's EUO, there seems to be some miscommunication that occurred between counsel and Ms. Pacheco during the EUO.  Ms. Pacheco indicated that she was at work when she spoke to her husband earlier in the evening and said goodnight.  Doc. 71-8 at 22, lines 2-13.  She also stated that her shift ended at 11:00 p.m.  Id. at 22,

deposition.  Doc. 72 at 17.  Unfortunately, Plaintiffs failed to attach Ms. Gillen's deposition to their motion.  The excerpts supplied by Defendant do not contain page 21 or support this assertion.

lines 2-4.  Based on the cellphone bill, Mr. Disla called 9-1-1 at 3:51 a.m. and his wife at

3:53 a.m.[13]  Yet, Ms. Pacheco stated during the EUO that she left work when her husband

told her about the fire.  Obviously, there was some confusion during this part of the

questioning.  Whether Ms. Pacheco was being evasive or just did not understand is

unclear.  The court cannot conclude as a matter of law that Ms. Pacheco was materially

misrepresenting her location at the time.  Similarly, the court cannot conclude that Mr.

Disla's statement regarding his wife's whereabouts at the time of the fire was anything

more than a simple misstatement.

      10.    <u>Whether Ms. Pacheco was Present when Mr. Disla Gave a Statement
to Police</u>

Finally, Allstate contends Plaintiffs' contradictory statements regarding Ms.

Pacheco's presence during Mr. Disla's statement to the police about the fire amount to

material misrepresentations.  According to the claims log and Ms. Pacheco's EUO, the

police kept Ms. Pacheco and her husband separated when they gave their statements.

Docs. 71-12 at 7, Doc. 71-8 at 24.  However, Mr. Disla and Detective Driscoll, who

conducted the interview, both indicated that Ms. Pacheco acted as a translator during his

statement.  Docs. 71-17 at 2, 71-9 at 18.

It is not clear that Ms. Pacheco's statement was an intentional falsehood.  She

stated that she and her husband could not communicate in the car when they were taken

to the police station.  Doc. 71-8 at 23.  Mr. Disla made a statement to the police at

approximately 9:00 a.m.  Doc. 71-17 at 2.  It is typed on a single page.  It is unclear when

---

[13]The number on the cellphone bill corresponds to the number Ms. Gillen gave as
one for Ms. Pacheco.  Docs. 71-15 at 11; 72-9 at 3.

the Dislas were transported to the police station, and whether Ms. Pacheco thought that in the intervening time or prior to her arrival at the Stanwood property, her husband had given another statement for which she was not present.

Contrary to Allstate's contention that there are no genuine issues of material fact and that Plaintiffs misrepresented material facts during the investigation of their claims, I conclude that it would be inappropriate on the current record to find as a matter of law that the inconsistencies upon which Allstate relies are material misrepresentations.  As previously stated, innocent mistakes are insufficient to warrant summary judgment. Justofin, 2002 WL 1773007, at *4.  As explained, many of the inconsistencies may be the product of miscommunication, misunderstanding, or a language barrier.  Therefore, I will deny Allstate's motion with respect to the breach of contract claim.

### B.    Bad Faith

Allstate also seeks summary judgment on Plaintiffs' bad faith claim.  Under Pennsylvania law, "if the court finds that the insurer has acted in bad faith toward the insured, the court may" award interest, award punitive damages, and assess court costs and attorney's fees against the insurer.  42 Pa. C.S.A. § 8371.  Although bad faith is not defined in the statute, the courts of Pennsylvania have found that '[b]ad faith is 'any frivolous or unfounded refusal to pay proceeds of a policy." Post v. St. Paul Travelers Ins. Co., 609 F. Supp.2d 382, 385 (E.D. Pa. 2009) (quoting Green v. United Servs. Auto. Assn., 936 A.2d 1178, 1189 (Pa. Super. 2007)).  "A reasonable basis is all that is required to defeat a claim of bad faith." Id. (quoting J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004)).

In order to succeed on a bad faith claim, a plaintiff must establish that the insurer did not have a reasonable basis for denying coverage and the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage. Hasan, 2013 WL 1773816, at *12 (citing Kosierowski v. Allstate Ins. Co., 51 F. Supp.2d 583, 588 (E.D. Pa. 1999)). Additionally, the Plaintiff must establish bad faith by clear and convincing evidence. Quaciari v. Allstate Ins. Co., 998 F.Supp. 578, 581 (E.D. Pa. 1998) (citing Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)). "The standard of review is critical because it heightens a plaintiff's burden in opposing a motion for summary judgment." Hasan, 2013 WL 1773816, at *12 (citing Quaciari, 998 F. Supp. at 581). "Mere negligence or bad judgment is not bad faith." Id. (citing O'Donnell ex rel. Mitro v. Allstate Ins. Co., 734 A.2d 901, 905 (Pa. Super. 1999)).

Here Plaintiffs' bad faith claim is premised on the denial of benefits, the investigatory methods utilized, and Allstate's alleged use of Mr. Disla's language barrier as a pretext to deny coverage. Doc. 71-2 ¶¶ 42-45. Defendant argues that Plaintiffs have not produced any evidence that Allstate acted unreasonably or in bad faith. Plaintiffs rely on Allstate's concessions that it has no basis to conclude that the Dislas were responsible for the fire or the theft as strong evidence of bad faith. Doc. 76 at 24.

Throughout their response to Allstate's summary judgment motion, Plaintiffs argue that Defendant has improperly relied on cases in which the insureds were suspected of arson or otherwise responsible for the loss, a circumstance that Allstate has conceded is not the case here. However, the insurer may defeat a bad faith claim "by showing that it conducted a review or investigation sufficiently thorough to yield a reasonable

foundation for its action." <u>Hasan</u>, 2013 WL 1773816, at *13 (quoting <u>Luse v. Liberty Mut. Fire Ins. Co.</u>, 411 Fed. Appx. 462, 465 (3d Cir. 2011)).  "Bad faith cannot be found where the insurer's conduct is in accordance with a reasonable but incorrect interpretation of the insurance policy and the law." <u>Hamm</u>, 908 F. Supp.2d at 669-70 (W.D. Pa. 2012) (quoting <u>Bostic v. ITT Hartford Group, Inc.</u>, 56 F. Supp.2d 580, 587 (E.D. Pa. 1999)).

> [T]he insurance company 'need not show that the process used to reach its conclusion was flawless or that its investigatory methods eliminated possibilities at odds with its conclusion.  Rather, an insurance company simply must show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action."

<u>Id.</u> at 670 (quoting <u>Mann v. UNUM Life Ins. Co. of Am.</u>, No. 02-1346, 2003 WL 22917545, at *7 (E.D. Pa. Nov. 25, 2003)).

I find that Plaintiffs have not presented evidence sufficient to establish that Allstate lacked a reasonable basis for denying their claims.  As noted in the prior discussion, there are many inconsistencies in the statements provided by Plaintiffs.  Although there may be explanations for the inconsistencies, including a language barrier, there were sufficient contradictions in the testimony to justify Allstate's decision.  Despite the fact that Allstate's representative was unable to explain how each of the inconsistencies was material during her deposition, inconsistencies concerning Plaintiffs' residence at the location, Ms. Pacheco's whereabouts when the fire broke out, and how she learned of the theft, among others, were certainly "relevant and germane to the insurer's investigation as it was then proceeding." <u>Parasco</u>, 920 F.Supp. at 654 (quoting <u>Fine</u>, 725 F.2d at 183).

In a case substantially similar to this one, Allstate relied on material misrepresentations in denying homeowners coverage in a fire claim.  Hasan, 2013 WL 1773816.  In Hasan, questions arose about the residency of one of the homeowners, the number of children who resided at the property, one of the homeowner's activities and whereabouts on the day of the fire, how the fire was discovered, and the homeowners' relationship with the neighbors.  Id. at *7-10.  Like the present case, the insured was not fluent in English.  Id. at *5.  On summary judgment, the Honorable Lynne Sitarski concluded that whether Plaintiffs had made material misrepresentations would "hinge on a jury's determination of underlying facts," and denied Allstate's summary judgment motion on the breach of contract claim.  Id. at *10.  However, Judge Sitarski granted Allstate's motion with respect to the bad faith claim, finding that the plaintiffs failed to establish by clear and convincing evidence that Allstate lacked a reasonable basis for denying the claim.

> [W]hether ultimately resolved in Plaintiffs' favor or not, the same factual issues relevant to Allstate's defense of Plaintiffs' breach of contract claim affirmatively demonstrate that Allstate's investigation of the fire loss raised sufficient questions to support its decision to deny the claim. Specifically, when a fire is of suspicious origin, questions of who resides in a property, for whom are losses claimed, where insureds stayed on the night of the fire, when an insured last left a property on the day of the fire and when he returned, how a fire is discovered, whether neighbors and tenants might have a motive to start a fire, and an insured's actions increasing the insured against hazard, are all reasonable issues for the insurer to investigate before paying a fire loss claim.  Although Plaintiffs have come forward with sufficient evidence to create a genuine issue of material fact on whether Allstate breached its contract duty to pay the fire loss claim, they have not satisfied their heightened summary

> judgment burden of coming forward with clear and
> convincing evidence that Allstate lacked a reasonable basis
> for denying the claim.  Given the record of myriad
> inconsistencies disclosed by Allstate's investigation – which
> may be the product of a language barrier or an attempt to
> misrepresent facts – the Court cannot say as a matter of law
> that Allstate acted without a reasonable basis when it denied
> benefits or that it knew or recklessly disregarded its lack of
> reasonable basis.

Id. at *13.

Like the court in Hasan, I find that Plaintiffs have not presented evidence sufficient to establish that Allstate lacked a reasonable basis for denying their claims.  As noted in the prior discussion, there are many inconsistencies in the statements provided by Plaintiffs, including information regarding Ms. Pacheco's residency at the Stanwood property, her whereabouts at the time of the fire, and how she learned of the theft. Although there may be explanations for the inconsistencies, including a language barrier, there were sufficient contradictions in the testimony to justify Allstate's decision.[14]  An insurer "may defeat a bad faith claim 'by showing that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action.'" Hasan, 2013 WL 1773816, at *13 (quoting Luse v. Liberty Mut. Fire Ins. Co., 411 Fed. Appx. 462, 465 (3d Cir. 2011)).  Here, I conclude that Plaintiffs have not adduced

---

[14]As previously mentioned, see supra at 8 n.7, at the time Allstate denied Plaintiffs' claims, it also relied on the mistaken belief that Mr. Disla had lied about his activities at the time he discovered the fire, based on his cellphone bill which showed outgoing text messages prior to his call to 9-1-1.  See Docs. 71 at 19 n. 9; 72-5 at 2; 72-7 at 9-10; 72-8 at 3-4.  It was later discovered that the text messages were logged in Pacific Time rather than Eastern Time as the phone calls had been.  See Docs. 72-7 at 24-25; 72-9 at 5.  As previously stated, the insurance company's investigation need not be flawless and a finding of bad faith cannot be based on negligence or bad judgment.  Hasan, 2013 WL 1773816, at *12 (citing O'Donnell, 734 A.2d at 905).

evidence to support the conclusion that Allstate denied their claim in bad faith.

Therefore, I will grant Allstate's motion with respect to Plaintiffs' bad faith claim.

### C. Insurance Fraud

With respect to Allstate's counterclaim for insurance fraud, the court has cross-motions for summary judgment. The Pennsylvania Insurance Fraud statute allows a civil cause of action if an insured

> [k]nowingly and with the intent to defraud any insurer . . .
> presents or causes to be presented to any insurer . . . any
> statement forming a part of, or in support of, a claim that
> contains any false, incomplete, or misleading information
> concerning any fact or thing material to the claim.

18 Pa. C.S.A. § 4117(a)(2). An insurer damaged by insurance fraud may recover compensatory damages including reasonable investigation expenses, costs of suit and attorneys' fees, and may recover treble damages if the defendant has engaged in a pattern of violating the insurance fraud statute. Id. § 4117(g).

The same factual disputes that precluded summary judgment with respect to Plaintiffs' breach of contract claim also bar summary judgment for either side on the insurance fraud counterclaim. The Insurance Fraud statute requires that the claimant knowingly or with the intent to defraud the insurer present false, incomplete or misleading information regarding a material fact. 18 Pa. C.S.A. § 4117(a)(2). As explained earlier, the inconsistencies in Plaintiffs' statements may be the product of

miscommunication, misunderstanding, a language barrier, or an attempt to mislead the insurer.[15]  Therefore I will deny both motions with respect to the fraud counterclaim.

To the extent Plaintiffs challenge the insurance fraud counterclaim arguing that Allstate has not produced evidence of damages, I will also deny summary judgment.  The statute lists the categories of damages available including reasonable investigation expenses, costs of suit and attorneys' fees.  18 Pa. C.S.A. §4117(g).  At this stage in the proceedings, Defendant cannot produce an itemized list.  The calculation of damages under section 4117 is routinely left for the court after a verdicts has been returned in favor of the insurer.  At that point, the counter-claimant presents the court with a request for expenses, costs and fees.  See Grammenos v. Allstate Ins. Co., Civ. No. 07-2725, 2009 WL 2448556, at *1 (E.D. Pa. Aug. 7, 2009) (considering post verdict motion for damages pursuant to § 4117); Wezorek, 2007 WL 2264096, at *16 (directing counter claimant to submit proof of damages post verdict); Valenti v. Allstate Ins. Co., 243 F. Supp.2d 200, 203 (M.D. Pa. 2003).

The briefing on the summary judgment motions presents an issue that must be resolved prior to trial.  Allstate contends that the burden of proof applicable to the Insurance Fraud statute, 18 Pa. C.S.A. § 4117, is preponderance of the evidence.  See

---

[15]To the extent Plaintiffs seem to argue that Allstate's counterclaim is barred because it has admitted that it has no evidence that Plaintiffs were responsible for the theft or fire, Plaintiffs are incorrect.  The statute as quoted above does not require that the Plaintiffs be responsible for the loss.  As discussed in the breach of contract section of this memorandum, materiality requires only that "the false statement concerns a subject relevant and germane to the insurer's investigation as it was then proceeding." Parasco, 920 F.Supp. at 654 (quoting Fine, 725 F.2d at 183).  Statements regarding the Plaintiffs' whereabouts at the time of the losses, how they learned of the losses, and resultant damages, among others, are clearly germane to the insurer's investigation.

Doc. 71-20 at 15.  The Dislas contend that Allstate bears the burden of proof on its counterclaim by clear and convincing evidence.  See Doc. 79 at 1.  My research has revealed a difference of opinion on the subject.[16]

The Insurance Fraud statute is silent as to the applicable burden of proof. Common law fraud in Pennsylvania must be proven by clear and convincing evidence. Royal Indem. Co. v. Deli By Foodarama, Inc., Civ. No. 97-1267, 1999 WL 178543, at *7 (E.D. Pa. Mar. 31, 1999) (citing Moser v. DeSetta, 589 A.2d 679, 682 (Pa. 1991); Sewak v. Lockhart, 699 A.2d 755, 759 (Pa. Super. 1997)).  Similarly, an insurer attempting to void a policy ab initio for misrepresentations made in the application must prove such misrepresentations by clear and convincing evidence.   Bonsu v. Jackson Nat. Life Ins. Co., Civ. No. 05-2444, 2010 WL 55714, at *4 (M.D. Pa. Jan. 4, 2010); Tudor, 697 A.2d at 1014-15.   However, courts have disagreed about the standard applicable in section 4117 claims.  Compare Valenti, 243 F. Supp.2d at 230 (applying clear and convincing standard after discussion); Wezorek, 2007 WL 2264096, at *14 (applying clear and convincing standard without discussion); Allstate Ins. Co. v. Am. Rehab. and Physical Therapy, Inc., 330 F.Supp.2d 506, 509 (E.D. Pa. 2004) (applying clear and convincing standard without discussion); with Majestic Box Co., Inc. v. Frank, Civ. No. 96-8118, 1998 WL 720463, at *2-3 (E.D. Pa. Sept. 2, 1998) (applying preponderance of the

---

[16]Whether viewed through the preponderance lens or the clear and convincing lens, genuine issues of material fact regarding the alleged misstatements preclude summary judgment.

evidence standard after discussion and noting that the legislature could have adopted a clear and convincing standard but did not).[17]

Considering the limited briefing provided by counsel and the conflict in authorities I have found, I ask that counsel provide further briefing limited to the burden of proof applicable to section 4117 claims.  I direct counsel's attention to the courts' discussions in <u>Tudor</u> and <u>Majestic Box</u>.  Although <u>Tudor</u> did not involve section 4117, the court's analysis of fraud may be applicable to section 4117.[18]

An appropriate Order follows.

---

[17]The cases cited by Allstate in support of the proposition that the preponderance standard applies do not specifically address section 4117.

[18]In their reply brief, Plaintiffs request oral argument on the summary judgment motions and Defendant does not oppose this request.  <u>See</u> Docs. 79 at 1; 80 at 1.  The court has no need for argument at this point, but may ask for argument on the appropriate evidentiary standards for the material misrepresentation defense and the statutory fraud counterclaim after counsel have briefed the issues.